UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CECILIA N. KING,

    Plaintiff,

v.                                            CASE NO. 8:17-cv-2982-T-02TGW

JENNIFER BENCIE, *et al.*,

    Defendants.
_____/

## **O R D E R**

Before the Court is Defendant Jennifer Bencie's Motion to Dismiss, or alternatively, for Judgment on the Pleadings and Request for Judicial Notice (Dkt. 59), Defendant's Doeberl and Drawdy's Motion to Dismiss, or alternatively, for Judgment on the Pleadings and Request for Judicial Notice (Dkt. 57), Defendant Eddie Rodriguez' Motion to Dismiss, or alternatively, for Judgment on the Pleadings and Request for Judicial Notice (Dkt. 58), Plaintiff's Opposition to Defendants' Motion to Take Judicial Notice (Dkt. 74), and Plaintiff's Opposition to Defendants' Motions to Dismiss, her affidavit, and a flash drive containing record materials. Dkts. 75, 77, 78. After careful consideration of the allegations of the complaint (Dkt. 1), the submissions of the parties, and Plaintiff's prior lawsuit, the Court concludes the motions should be granted with prejudice.

# PERTINENT ALLEGATIONS

The *pro se* Plaintiff Cecelia King is a gerontologist and epidemiologist specializing in quality and access to health care with a focus on vulnerable populations. Dkt. 1 ¶ 5. Defendant Jennifer Bencie was the Administrator and County Health Officer for the Florida Department of Health and served as the incoming Chair of the Manatee Healthcare Alliance. Dkt. 1 ¶ 7. Defendant Eddie Rodriguez was the Assistant Director of the Health Department of Manatee County. Dkt. 1 ¶ 21. Defendants Lynne Drawdy and Susan Doeberl were also employees of the Manatee County Health Department. Dkt. 1 ¶ 41.

Plaintiff moved to Mexico in March 2013. Dkt. 1 ¶ 9. On March 13, 2013, Bencie contacted Plaintiff to recruit her to develop a strategic plan for indigent health care in Manatee County, Florida. Dkt. 1 ¶ 6. On that date, Bencie described a Manatee County tax referendum with an "anticipated referendum date of June 18, 2013." Dkt. 1 ¶ 8. Plaintiff's expected start date as a health care consultant would be June 18, 2013, which was "not contingent on the outcome of the referendum." Dkt 1 ¶ 8.

On May 7, 2013, Bencie offered Plaintiff $100,000 to develop the indigent health care plan for Manatee County. Dkt. 1 ¶¶ 10, 31. Bencie stated, "I can make it happen tomorrow under OPS." *Id*. On May 12, Plaintiff accepted the offer and

agreed to start June 21, 2013. Dkt. 1 ¶ 11. At the time Plaintiff was also negotiating with Novartis and other places of employment; however, she gave up these opportunities for the consulting job. Dkt. 1 ¶ 13. On May 13, Bencie began emailing work to Plaintiff. Dkt. 1 ¶ 14.

Upon Plaintiff's arrival in Manatee County on June 21, 2013, she received a memorandum drafted by Bencie to the Florida Department of Health Office of Inspector General ("OIG"). Dkt. 1 ¶ 16. The memorandum requested approval of a full time employee with a salary of $50,000. *Id*.; Dkt. 75 at 23. Bencie admitted that she decided on June 10 to reduce the $100,000 offer. Dkt. 1 ¶ 17. On June 24, Plaintiff convinced Bencie, and Bencie agreed, to honor the $100,000 offer. Dkt. 1 ¶ 21. Also on that day, Bencie told Plaintiff that she thought Plaintiff would like the health insurance offered with the reduced pay arrangement. Dkt. 1 ¶ 20. Plaintiff continued to work for six weeks on the assurances that she would receive the original contractual offer for consulting. Dkt. 1 ¶ 22.

At the end of the six weeks, Plaintiff was offered a "Contractual Services Purchase Order Agreement." Dkt. 1-1 at 13-16, 19. Plaintiff refers to this July 2013 Contractual Services agreement as one for a "substitute position" different from the initial consulting offer. Dkt. 1-1 at 19 ¶ 30. She refused to consider this substitute agreement because not only was it an attempt "to substitute the

[previously] accepted $100,000 consulting offer [original OPS offer from Bencie in May 2013] with a DOH Manatee County job," but it would also require her to falsify dates and to accept terms different from the original offer with no guarantee of payment. Dkt. 1-1 at 19 ¶ 21, 25, 30. An OIG investigation ensued after Plaintiff filed an administrative complaint in October 2013.[1]

In February 2014 Bencie testified before the OIG that she did not discuss the attempted change in salary from the original agreement with Plaintiff, ostensibly based on the time difference between Mexico and Florida. Dkt. 1 ¶ 18.[2] Bencie never completed any paperwork to fund the position through OPS. Dkts. 1 ¶ 45; 1-1 at 19 ¶ 29. Rodriguez testified in February 2014 before the OIG that he knew there was no way Plaintiff could be paid for the work she did beginning June 21, 2013. Dkt. 1 ¶ 50.[3]

Plaintiff maintains she never refused the first OPS offer in May 2013 from Bencie. Dkts. 1 ¶¶ 39, 40; 1-1, at 18-19 ¶ 20 ("At no time did I ever decline the original offer."); 75 at 23 (same). She did reject all subsequent offers. Plaintiff ascribes fault to Drawdy and Doeberl because they told the OIG investigator that

---

[1] *See King v. Bencie*, No. 8:16-cv-2526-T-23MAP at docket 2 ¶ 21.

[2] Plaintiff submitted a flash drive to substantiate this allegation. Dkt. 78.

[3] Plaintiff again references the flash drive.

Plaintiff had refused the initial OPS offer. Dkt. 1 ¶ 40. They later retracted their previous statements when "pressed by the OIG investigator." *Id.* The instant complaint does not allege when, where and to whom the statements were made, but alleges that these statements are part of Plaintiff's present claim against Drawdy and Doeberl.

On August 9, 2013, Plaintiff's attorney wrote a letter to various state and county entities seeking to settle her claims arising out of these allegations. Dkt. 59-5. The breach of contract is alleged to have occurred on or before August 9, 2013. Dkt. 1 ¶¶ 36, 37.

Plaintiff sues Bencie for breach of an oral contract, fraudulent inducement, gross negligence, fraudulent concealment, civil conspiracy, and intentional infliction of emotional distress. She includes Rodriguez in the counts for fraudulent concealment and civil conspiracy. She sues Drawdy and Doeberl in a separate count for tortious interference with "contractual relations in a business relationship." All four Defendants are sued for intentional infliction of emotional distress. This action was filed on December 12, 2017, based on diversity of citizenship. Dkt. 1.

# FACTS OUTSIDE THE COMPLAINT[4]

In late July 2016, three years after the breach, Plaintiff, *pro se*, filed a lawsuit against Bencie in the state circuit court for Manatee County, Florida. *See King v. Bencie*, No. 8:16-cv-2526-T-23MAP at docket 2. The case was removed to the Middle District on August 30, 2016. *Id*. at Dkt. 1. In that case, Plaintiff sued Bencie for fraud based on these same facts. *Id*. at Dkt. 2. The district court in that case granted summary judgment and found "no evidence shows or suggests a 'knowing' falsehood or omission by Bencie." *King v. Bencie*, 2017 WL 4355592, at *1 (M.D. Oct. 2, 2017).[5] The district court added, "[E]ven if Bencie promised and [Plaintiff] accepted a $100,000 contract, the failure to perform is perforce a breach of contract, not a fraud." *King*, 2017 WL 4355592, at *2.

The district court was affirmed on appeal in *King v. Bencie*, 2018 WL 5304738 (11th Cir. Oct. 25, 2018). The Eleventh Circuit found that "King does not point to any evidence in the record from which one could reasonably infer that Bencie made the statement [that she could hire Plaintiff tomorrow as an OPS

---

[4] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 292 F.App'x 800, 802 (11th Cir. 2010) (internal citation omitted).

[5] On appeal, the Eleventh Circuit expressed specific agreement with this finding. *King v. Bencie*, 2018 WL 5304738, at *2 (11th Cir. Oct. 25, 2018).

employee at $100,000] 'with no intention of performing or with a positive intention not to perform.'" *Id.* at *2. "[T]he record is devoid of indicia of fraudulent intent." *Id*. at *3.

Prior to the district court's disposition of the case on summary judgment, Plaintiff sought leave to amend her complaint to state three different claims for relief – fraudulent inducement, fraudulent concealment, and gross negligence. Dkt. 59-2; Dkt. 20 in *King*, No. 8:16-cv-2526-T-23MAP. Plaintiff's motion was denied. Dkt. 59-3; Dkt. 26 in *King*, No. 8:16-cv-2526-T-23MAP.

## DEFENDANT BENCIE

### *Res Judicata*

" Under *res judicata*, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). To invoke the doctrine: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Id.* (citations omitted). Involving the same claim means that the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate,

as a former action." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999) (citation omitted). If the four elements are met, the next determination is "whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, *res judicata* applies." *In re Piper*, 244 F.3d at 1296 (citation omitted). The burden lies on the party asserting *res judicata*. *Id.*

If the contract between the parties was the foundation of the factual predicate in the first case, then a later-filed action is barred by *res judicata* "as long as the relevant claims *had occurred prior to filing the first lawsuit*." *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 n.3 (11th Cir. 2002) (holding that latter claim for fraud and negligent misrepresentation was barred by *res judicata* because both former and latter claims arose out of same factual predicate and the relevant claims occurred prior to filing the first lawsuit) (emphasis added).

The first three elements of *res judicata* are easily satisfied in this case. The district court's ruling in October 2017 constituted an adjudication on the merits, which was affirmed on appeal. This case, brought in December 2017, involves the same parties – Plaintiff and Bencie. The only element in question is whether the two cases involve the same causes of action.

Undoubtedly, the fraud claim in the 2016 action and the various claims brought here against Bencie stem from the same factual predicate. *See Dawley v. NF Energy Corp. of Am.*, 492 F. App'x 77, 79-80 (11th Cir. 2012) (holding that first action for claims based on breach of contract and second action based on claims for fraud arose out of same factual predicate). Plaintiff's complaint in the 2016 action and the complaint here are almost identical:

> Jennifer Bencie made false statements of material fact regarding the funding and the identity of the client to [Plaintiff]; Bencie knew that the . . .funding statement were false; she knew that Plaintiff relied on her misrepresentations; and [Plaintiff] did, in fact, rely upon such false statements and assurances; and, as a direct result of Bencie's intentional misrepresentations was injured by giving up her home in . . . Mexico, moving and leasing property in Florida, giving up other more lucrative opportunities, spending hours on work for which she was never compensated, and [harming] her professional reputation, consulting career.

Dkt. 1 ¶ 63; Dkt. 59-1 ¶ 46. Plaintiff, much like the plaintiff in *Dawley*, is attempting to sue again using different labels. The instant claim for breach of contract already existed when the complaint in the 2016 action was filed. The district court noted so in its order that was appealed and affirmed. *King*, 2017 WL at *2 ("[E]ven if Bencie promised and [Plaintiff] accepted a $100,000 contract, the failure to perform is perforce a breach of contract, not a fraud.").

Plaintiff even attempted to raise additional claims for fraud and gross negligence in the first action, which the district court denied. Dkts. 59-2, 59-3.[6] These claims against Bencie could have been raised in 2016. *See Dawley*, 492 F.App'x at 80 (citing *Trustmark*, 299 F.3d at 1270 n.3). Having determined that all four elements of *res judicata* are satisfied, and that all claims occurred before the first lawsuit was filed, the Court finds the claims for fraud, gross negligence, and breach of contract against Bencie are barred.

### ***Statute of Limitations***

This Court sits in diversity jurisdiction and must apply the substantive law of the forum state of Florida under *Erie*.[7] *See Meridian Constr. & Dev., LLC v. Admiral Ins. Co.*, 105 F.Supp.3d 1331, 1338 (M.D. Fla. 2013). State statutes of limitation are considered substantive. *See Dade Cty. v. Rohr Indus., Inc.*, 826 F.2d 983, 987 (11th Cir 1987) ("To determine the applicable statute of limitations for a diversity case in federal court, we must look to state law."). Where the statute of limitation defense appears on the face of the complaint, a motion to

---

[6] The district court denied the motion based on Plaintiff's waiting six months beyond the passage of nearly all the deadlines in the case management and scheduling order. Dkt. 59-3.

[7] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

dismiss may be granted. *See Carrillo v. Bank of N.Y.*, No. 09-61642-Civ, 2009 WL 5708925, at *2 (S.D. Fla. Dec. 22, 2009) (citation omitted).

Under Florida law, a claim for breach of an oral contract, fraud, and negligence must be brought within four years. Fla. Stat. § 95.11(3)(a) (negligence), (3)(j) (fraud), (3)(k) (oral contract). A claim for civil conspiracy carries a four-year statute of limitations. § 95.11(3)(o)(3)(o) (certain other intentional torts); *Armbrister v. Roland Int'l Corp.*, 667 F.Supp. 802, 809 (M.D. Fla. 1987). The intentional tort of infliction of emotional distress must also be brought in four years. § 95.11(3)(o); *W.D. v. Archdiocese of Miami, Inc.*, 197 So. 3d 584 (Fla. 4th DCA 2016).

A limitations period begins to run from the time the cause of action accrues. Fla. Stat. § 95.031. At the very latest, August 9, 2013, is the date on which the alleged breach of contract occurred. This is evidenced by Plaintiff's attorney's demand letter dated August 9 stating that Plaintiff had "a strong claim for breach of contract." Dkt. 59-5. The same date, August 9, also applies to all other causes of action alleged. For civil conspiracy and fraudulent inducement, the misleading statements had been made by August 9. Gross negligence based on Bencie's failure to obtain the promised funding of $100,000 was known prior to August 9.

As to intentional infliction, the acts constituting the breach, the concealment, and any inducement occurred by August 9.

As to fraudulent concealment, Plaintiff argues that she did not learn that Bencie was concealing information about funding until June 2017, which contradicts her earlier position that on June 20, 2013, she knew of the change in funding. Dkt. 1 ¶¶ 11, 70. *See Carter v. Lowe's Home Ctrs., Inc.*, 954 So. 2d 734, 735 (Fla. 1st DCA 2007) ("The delayed discovery doctrine was reserved to those cases where the plaintiff cannot readily discover the injury done to him."). Indeed, Plaintiff knew of the testimony taken in the OIG proceeding before she ever filed the first action in 2016. *See* Dkt. 2-13 in 8:16-cv-2526-T-23MAP.

Accordingly, this case, having been filed more than four years from August 9, 2013, is barred by the statute of limitations.[8]

## DEFENDANTS RODRIGUEZ, DRAWDY, AND DOEBERL

### *Statute of Limitations*

The three claims against Rodriguez are barred by the statute of limitations. As discussed earlier, a four-year limitations period controls for fraudulent concealment, civil conspiracy, and intentional infliction of emotional distress. The

---

[8] There is no need to address whether the claims against Bencie fail to state causes of action, because they are barred by *res judicata*, the statute of limitations, or both.

claims against Rodriguez allege that he misled Plaintiff, and conspired with Bencie to mislead Plaintiff, to sign an alternative contract on July 27, 2013. By August 9, 2013, the last element of all of these causes of action had occurred.

Also barred by the statute of limitations are the two claims brought against Drawdy and Doeberl – tortious interference with contractual relations in a business relationship and intentional infliction of emotional distress. A four-year statute of limitations applies to both torts. Fla. Stat. 95.11 § 95.11(3)(o); *W.D.* (intentional infliction of emotional distress); *Morsani v. Major League Baseball*, 739 So. 2d 610, 612 (Fla. 2d DCA 1999) (tortious interference with contractual rights and advantageous business relationships).

Plaintiff alleges that Drawdy and Doeberl interfered in the contractual agreement between Plaintiff and Bencie when they stated in the OIG proceeding that Plaintiff had rejected the agreement. Dkt. 1 ¶¶ 83, 86. She blames them for Bencie's refusal to honor the original offer for $100,000. The last element of a claim for tortious interference is the damages suffered by a plaintiff as result of the breach of the contractual or business relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Howard v. Murray*, 184 So. 3d 1155 (Fla. 3d DCA 2015). Viewing the allegations of the complaint in the light most favorable to Plaintiff, she suffered damages no later than August 9, 2013, the day

her attorney sent the demand letter. *See Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co.*, 793 So. 2d 1127 (Fla. 5th DCA 2001) (holding that delayed discovery doctrine does not apply to tortious interference with business relationship). The same date applies to the intentional infliction of emotional distress.

The Court finds that any further amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Because the statute of limitations has run on all claims, as apparent from the face of the complaint, these claims would not survive a motion to dismiss.

*<u>**Failure to State Claims**</u>*

Apart from the statute of limitations, Plaintiff's complaint fails to state claims for relief. Applying the *Twombly-Iqbal*[9] plausibility standard to the complaint, the Court finds that drawing all inferences in favor of Plaintiff, the complaint is insufficient.

Plaintiff's conclusions that Rodriguez conspired with Bencie to mislead Plaintiff to sign an alternative contract on July 27, 2013, do not state a claim for civil conspiracy. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Alt. Corp. v. Twombly*, 550 U.S. 544 (2007).

3d 855, 863 (Fla. 4th DCA 2012) (listing elements of conspiracy and requiring complaint to set forth "clear, positive, and specific allegation of civil conspiracy"). Failure to allege the scheme – the act Rodriguez and Bencie agreed to take – makes the complaint deficient.

To state a claim for tortious interference, the alleged business relationship must afford the plaintiff an existing or prospective legal or contractual right. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1995) (citation omitted); *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810 (Fla. 2d DCA 2002) (holding that competitor did not tortiously interfere with contractual relationships because competitor did not cause or induce the breach). According to Plaintiff's own allegations, Bencie intended to breach the contract without any assistance from Drawdy or Doeberl. Moreover, there was no existing business or contractual relationship between Bencie and Plaintiff at the time. *Realauction.com, LLC v. Grant Street Group, Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011). Accordingly, there was no agreement which in all probability would have been completed but for the alleged interference of Drawdy and Doeberl.[10]

---

[10] That Plaintiff failed to allege when, where, and to whom Drawdy and Doeberl made statements that Plaintiff rejected the original contract, is just one more flaw in the claim for tortious interference.

Plaintiff alleges that Drawdy, Doeberl and Rodriguez acted in concert to intentionally inflict emotional distress. The alleged outrageous conduct is the interference with Plaintiff's "consulting practice, reputation, peace of mind, and financial security either by breaching the contract, concealing the status of the funding, causing the contract and business relationship to be breached, or by leading [her] to believe the original agreement would be honored." Dkt. 1 ¶ 89. This conduct, however, is not outrageous enough, as a matter of law, to inflict emotional distress under Florida law. *See Vance v. So. Bell Tel. & Telegraph* Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993); *Mundy v. So. Bell Tel. & Telegraph Co.*, 676 F.2d 503, 505 (11th Cir. 1982); *Patterson v. Downtown Med. & Diagnostic Ctr.*, 866 F.Supp. 1379, 1383 (M.D. Fla. 1994) (holding that plaintiff's termination after assurances to the contrary did not state cause of action because conduct was not sufficiently outrageous). The complaint must be dismissed. Any amendment would be futile.

It is therefore **ORDERED AND ADJUDGED** as follows:

1) Defendant's Doeberl and Drawdy's Motion to Dismiss (Dkt. 57) is granted.

2) Defendant Rodriguez' Motion to Dismiss (Dkt. 58) is granted.

3) Defendant Bencie's Motion to Dismiss (Dkt. 59) is granted.

4) The Complaint (Dkt. 1) is dismissed with prejudice.

5) Defendants' Motion to Compel Response to Subpoena Duces Tecum (Dkt. 82) is denied as moot.

6) Plaintiff's Motion for Protective Order (Dkt. 84) is denied as moot.

7) The Clerk is directed to enter judgment for Defendants and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on February 14, 2019.

s/*William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record
Plaintiff, *pro se*